```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF NEW YORK
```

_____

WAYNE H. SIPE,

               Plaintiff,

     v.                             09-cv-01353
                                      (WGY)
MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

               Defendant.

_____

WILLIAM G. YOUNG, United States District Judge[1]

**<u>DECISION and ORDER</u>**

**I.   INTRODUCTION**

    Wayne H. Sipe ("Sipe") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").  Sipe challenges the decision of the Administrative Law Judge (the "hearing officer") denying his application for Supplemental Security Income ("SSI") benefits.  Sipe requests this Court grant his motion for judgment on the pleadings and remand this case to the Commissioner for further proceedings.  Pl.'s Mem. Law ("Sipe Mem."), ECF No. 9.  The Commissioner requests this Court affirm the hearing officer's

_____

    [1] Of the District of Massachusetts sitting by designation.

decision and grant his motion for judgment on the pleadings. Def.'s Mem. Law Supp. Mot. J. Pleadings, ECF No. 11.

### A.   Procedural Posture

On February 16, 2006, Sipe filed an application for SSI benefits, alleging disability beginning December 1, 1996.  Admin. R. 17.  Sipe has filed three previous applications for benefits: first, September 1, 1994, which resulted in an unfavorable decision dated May 10, 1995; second, December 13, 1996, which was dismissed on December 24, 1997; and third, December 9, 2003, which was initially denied on April 8, 2004, then denied at the hearing level on April 27, 2005.  Id.  The current application was filed within two years after the April 8, 2004, denial, therefore the December 9, 2003, application could be reopened if new and material evidence or other good cause was shown.  Id.  The hearing officer determined that because the Administrative Record included new and material evidence (a school psychologist's report), the December 9, 2003, application would be reopened to consider evidence of Sipe's condition on and after December 9, 2003.  Id.

Sipe's February 16, 2006, application was denied on April 25, 2006, and Sipe filed a timely written request for hearing on May 11, 2006.  Id.  Sipe testified at a hearing held on March 18, 2008, and the Administrative Record was held open until April 1, 2008.  Id.  The hearing officer issued an unfavorable decision on

August 29, 2008.  Id. at 26.  Sipe then filed a timely request for review, id. at 12, which was denied by the Appeals Council on October 23, 2009, id. at 6-9.  On December 3, 2009, Sipe filed the present action with this Court to review the decision of the Commissioner pursuant to section 205(g) of the Social Security Act.  Compl. 1, ECF No. 1.

    **B.**    **Factual Background**

Sipe was born in 1977.  Admin. R. 265.  He started using alcohol and drugs when he was seven years old and smokes two packs of cigarettes a day.  Id. at 266.  He was arrested for armed robbery, assault, gun charges, and an escape attempt in 1996.  Id. at 266, 404.  He spent six and a half years in prison, and spent an additional five months on parole.  Id. at 266.  Sipe has between a ninth and tenth grade education, id. at 402, but received vocational training while incarcerated, id. at 403.  He is able to read and write "somewhat."  Id.  His prior employment includes fast-food restaurants, security, and some labor work.  Id. at 265.  Sipe has a history of both physical and mental impairments.  Id. at 265-66.

    **1.**    **Physical Impairments**

Sipe was diagnosed with human immunodeficiency virus ("HIV") in 1996.  Id. at 333.  According to Frederick B. Rose, M.D. ("Dr. Rose"), an HIV physician, Sipe "has most remarkable viral suppression and climb in CD4 count on no antiretroviral therapy."

Id. at 327.  Because of Sipe's improvement, Dr. Rose could not support Sipe in his request for disability benefits.  Id.

On December 15, 2005, Sipe saw Lisa Kaufman, M.D. ("Dr. Kaufman"), complaining of chronic pain in his legs, shoulders, and back.  Id. at 263.  Dr. Kaufman noted that Sipe was alert, oriented, and in a pleasant mood with no acute distress.  Id. at 264.  Dr. Kaufman noted a questionable diagnosis of fibromyalgia and restricted Sipe to light activity and part-time work until he attended rehabilitation.  Id.  Prior to this appointment, Dr. Rose had provided Sipe with an appointment to see a rheumatologist, id. at 328, which he did not attend, id. at 263.

On February 13, 2006, Sipe sought further treatment for his worsening leg pain.  Id. at 260.  Sipe saw Megan A. Khosla, M.D. ("Dr. Khosla"), who performed several tests but could not determine the cause of Sipe's neuropathy.  Id. at 261-62.  The following day, on February 14, 2006, Sipe saw rheumatologist Paul E. Phillips, M.D. ("Dr. Phillips").  Id. at 257.  After a physical examination, Dr. Phillips found that Sipe's hip pain could not be explained by musculoskeletal examination, it was not corroborated to any anatomic structures, and he found "no organic reason for [Sipe] to have a pain of this intensity."  Id. at 258.  Dr. Phillips also found no evidence of inflammatory myositis or inflammatory arthritis.  Id.

On April 19, 2006, a Physical Residual Functional Capacity

Assessment was completed which found Sipe could lift ten pounds occasionally and less than ten pounds frequently, stand and walk at least two hours in an eight hour workday, and sit about six hours in an eight hour workday.  Id. at 276-81.

On February 15, 2008, Satinder Singh, M.D. ("Dr. Singh") and Debra Buchanan, M.D. ("Dr. Buchanan") completed a Medical Source Statement indicating that Sipe's physical impairments were frequently severe enough to interfere with the attention and concentration necessary to perform simple work tasks, but concluded Sipe could sit for about four hours in an eight hour workday, stand or walk about four hours in an eight hour workday, and lift twenty pounds frequently.  Id. at 300-02.

### 2.  Mental Impairments

In 1991, at age 14, Sipe was evaluated by Cortland City School District psychologist Marin Vieweg ("Vieweg").  Id. at 309.  Vieweg administered several tests, including the Wechsler Intelligence Scale for Children - Third Edition ("IQ Test").  Id. Sipe previously had been given IQ Tests in 1984 and 1988.  Id. at 306.  In 1991, according to the report,

> [Sipe] obtained a Full Scale IQ of 77, suggesting that, at the 90% confidence level, his IQ falls within the range of 73 to 83, and that he functions within the borderline range of cognitive abilities. [Sipe]'s Verbal IQ was 71 (67 to 78) and his Performance IQ was 89 (83 to 97). [Sipe]'s Verbal IQ was within the borderline range, while his Performance IQ was in the low average to average range.

Id.  Vieweg recommended that Sipe's classification should be

5

changed to Learning Disabled.  Id. at 309.

On March 21, 2006, Sipe went for a consultative evaluation with Kristen Barry, Ph.D. ("Dr. Barry").  Id. at 265.  Dr. Barry evaluated Sipe and noted that his overall manner of relating and social skills were adequate, his dress was neat and casual, he exhibited good hygiene and grooming, he had normal gait, posture, and motor behavior, and he was able to maintain appropriate eye contact.  Id. at 267.  Dr. Barry found that Sipe was able to do simple calculations, but struggled with serial threes, and was unable to do serial sevens.  Id.  Sipe was able to recall a four-digit number forward and a two-digit number backward and Dr. Barry estimated his intellectual functioning to be around the borderline range.  Id.  Dr. Barry stated that Sipe was able to dress, bathe, and groom himself, but noted that Sipe claimed that his pain limited his ability to cook, clean, or do laundry.  Id. at 268.  Dr. Barry concluded that Sipe was able to follow and understand very simple directions and instructions, should be able to perform some simple rote tasks, but may have difficulty with any complex tasks or directions.  Id.  Dr. Barry diagnosed Sipe with impulse control disorder, but ruled out mild mental retardation.  Id.

On April 21, 2006, a Mental Residual Functional Capacity Assessment was completed by Ed Kamin, Ph.D. ("Dr. Kamin").  Id. at 282.  In the assessment, Dr. Kamin found Sipe was moderately

limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  Id. at 282-83.

In the Psychiatric Review Technique Form, Dr. Kamin listed only Personality Disorder and Substance Addiction Disorder as the categories upon which the medical dispositions were based.  Id. at 286.  Dr. Kamin did not list mental retardation.  Id.  Dr. Kamin indicated mild restrictions on the activities of daily living, moderate difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence or pace, with insufficient evidence to assess the degree of

repeated episodes of deterioration.  <u>Id.</u> at 296.

### 3. Testimony

On March 18, 2008, Sipe attended a hearing regarding SSI benefits.  <u>Id.</u> at 393.  Sipe described his criminal history and limited prior work history.  <u>Id.</u> at 404-08.  He described the location and intensity of his physical pain as ranging from a seven to a ten on a one to ten scale.  <u>Id.</u> at 409-20.  He also stated that he can lift up to 75 pounds occasionally and 20 pounds more frequently.  <u>Id.</u> at 409.  He stated he is able to use his hands, tie his shoes, write, eat, dress, shower, shave, cook, clean, wash dishes, do laundry, sweep the floor, and cut the grass using a push mower.  <u>Id.</u> at 410-12.  He stated that he lives with his girlfriend and spends time with his girlfriend's three children, taking the two year-old daughter to the park and helping to take care of her.  <u>Id.</u> at 413-14.

Sipe described himself as having a slight temper because he does not like people standing over his shoulder.  <u>Id.</u> at 414.  Despite this, he believes he gets along with people pretty well.  <u>Id.</u>  He further stated that he does not have mood swings and is not depressed, but does get cranky once in a while.  <u>Id.</u> at 423.  He stated that he spends time looking for work, <u>id.</u> at 413, and would rather work if he could, <u>id.</u> at 409.[2]

---

[2] The record and the hearing officer's decision also contains visits by Sipe to doctors and other medical professionals not specifically mentioned herein.  <u>See</u> <u>id.</u> at 23-25.  These records

## II. LEGAL STANDARD

Federal district courts "have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); Laven v. Astrue, No. 1:10-CV-01360(NPM), 2011 WL 6318360 (N.D.N.Y. Dec. 15, 2011).

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner. Federal district courts have the same standard of review for social security benefits as the court of appeals. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991)). In general, the factual findings of the hearing officer are conclusive unless they are not supported by substantial evidence. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). Legal decisions are reviewed de novo, and "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguabl[y] supported by substantial evidence, the Commissioner's decision may not be affirmed." Martone v. Apfel, 70 F. Supp. 2d

---

contain medical history and evaluations consistent with those taken and completed by the medical professionals discussed above.

9

145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.3d 983, 986 (2d Cir. 1987)).

### B. Social Security Disability Standard

An individual is considered disabled if he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.

The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden on the last step. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). The steps

ought be followed in order.   20 C.F.R. § § 404.1520(a), 416.920(a)(4).

### III.   THE HEARING OFFICER'S DECISION

The hearing officer first determined that Sipe had not engaged in substantial gainful activity since December 9, 2003. Admin. R. 19.  The hearing officer next found that Sipe's borderline intellectual functioning, impulse control disorder, history of substance addiction disorder and depression, and history of peripheral neuropathy were severe impairments that did not meet or equal those listed in the regulations.  Id. at 19-22. Subsequently, the hearing officer determined that Sipe could lift or carry ten pounds occasionally, frequently sit for six hours in an eight hour workday, stand or walk for two hours in an eight hour workday, and engage in postural activities occasionally. Id. at 22.

Further, the hearing officer assessed Sipe's mental residual functional capacity finding that Sipe could perform simple and some detailed tasks, respond appropriately to ordinary supervision and interactions with coworkers and ordinary work situations, and deal with changes in a routine work setting.  Id. The hearing officer found that, while Sipe can be in the presence of the public, he cannot interact appropriately with the general public.  Id.  Sipe has no past relevant work history, so the process reached step five.  Id. at 25.  The hearing officer,

11

considering Sipe's age, education, work experience, and residual functional capacity, concluded that there are jobs that exist in significant numbers in the national economy that Sipe could perform. Id. Accordingly, the hearing officer found that Sipe was not disabled. Id. at 26.

**IV. ANALYSIS**

Sipe contends that the hearing officer committed reversible error by (1) failing to develop the record by not ordering an updated IQ Test;(2) failing properly to apply the Psychiatric Review Technique; and (3) failing to consult a vocational expert. Sipe Mem. 13-19.

### A. Failure to Complete the Record

In the Second Circuit, the hearing officer must "'affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). The hearing officer must do so even when the claimant is represented by counsel. Id. The hearing officer is entitled to rely not only on what the record says, but also on what it does not say. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citing Rutherford v. Schweiker, 685 F.2d 60, 63 (2d Cir. 1982)); Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam).

Sipe contends that there is a gap in the record with respect

to his mental condition, specifically the severity of his impairment.  Sipe Mem. 14.  He argues that the hearing officer should have updated the IQ Test given in 1988 to determine whether he has mild mental retardation.  Id.

Sipe's argument fails for several reasons.  First, the IQ Test given in 1988 determined that Sipe was learning disabled, not mentally retarded.  Admin. R. 309.  Vieweg assessed the results of the IQ Test and determined that Sipe fell within borderline and low average range.  Id. at 306.  Second, the record does not contain a gap because the hearing officer completed the record through consultative evaluations.  Dr. Barry noted in her diagnosis that mild mental retardation was specifically ruled out.  Id. at 268.  Further, Dr. Kamin, in completing his assessment, only noted Personality Disorder and Substance Abuse Disorder, not Mental Retardation.  Id. at 286.  As the Commissioner noted, the record contains hundreds of pages of treatment notes that provided sufficient evidence upon which the hearing officer could properly base his decision.  There is nothing in this record that suggests Sipe is mentally retarded, even mildly.

Accordingly, this Court rules that the hearing officer did not fail to complete the record.

    **B.**    **Failure to Properly Apply the Psychiatric Review Technique**

The regulations "require application of a 'special

technique' at the second and third steps of the five-step framework." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); see also 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique "requires a reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.'" Kohler, 546 F.3d at 265–66 (quoting 20 C.F.R. § 404.1520a(b)(1)). "If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' . . . which specifies four broad functional areas." Id. at 266 (quoting 20 C.F.R. § 404.1520a(b)(2)). These areas are: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Id. (citing 20 C.F.R. § 404.1520a(c)(3)); see also 20 C.F.R § 416.920a(c)(3).

Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more." Id. "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." Kohler, 546 F.3d at 266.

The regulations also require that the application of the special technique be documented. Id. (citing 20 C.F.R. § 404.1520a(e)). Generally, a medical or psychological consultant will complete a standard document, known as a "Psychiatric Review Technique Form" ("Review Form"). Id. Pursuant to the regulations, the hearing officer's written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" Id. (quoting 20 C.F.R. § 404.1520a(e)(2)).

In this case, the hearing officer relied on the Review Form completed by a state agency reviewing psychologist, Dr. Kamin. Admin. R. 296. Dr. Kamin concluded that Sipe's mental impairments caused a mild restriction of activities of daily living, and moderate difficulties in maintaining social function, concentration, persistence, or pace. Id. Since Dr. Kamin found the record contained insufficient evidence of repeated episodes of decompensation, each of extended duration, the hearing officer was warranted in finding that Sipe had no such repeated episodes. Id.

The hearing officer properly applied the special technique and his conclusion was supported by substantial evidence. Evidence in the record consistently showed that Sipe was able to dress, bathe, and groom himself on a daily basis. Id. at 267. Sipe stated that he could cook, prepare food, manage money, use

public transportation, perform general cleaning, do laundry, and go shopping.  Id. at 410-12.  A consultative examination further found that despite borderline intellectual abilities, Sipe could understand simple directions and instructions.  Id. at 268.  Sipe was also looking for work.  Id. at 413.

In light of this evidence, the Court holds that the hearing officer did not err in his application of the Psychiatric Review Technique.

### C.   Failure to Consult a Vocational Expert

The final issue is whether the hearing officer's failure to consult a vocational expert at step five of the disability determination constitutes legal error.  The "appropriateness of 'applying the grid guidelines and the necessity for expert testimony must be determined on a case-by-base basis.'"  Webb v. Astrue, No. 3:11-CV-94 (GLS), 2012 WL 589660, at *5 (N.D.N.Y. Feb. 22, 2012) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).  The Medical-Vocational Guidelines (the "Grids"), however, do not take into account a claimant's non-exertional impairments, and therefore "the [hearing officer] should consult with a vocational expert before making a determination as to disability."  Id.  When a claimant has a significant non-exertional impairment, the Social Security Administration may not apply the Grids.  Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999) (internal citations and quotations omitted).  The

16

impairment must be significant because "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Roma v. Astrue, No. 10-4351-CV, 2012 WL 147899, at *5 (2d Cir. Jan. 19, 2012) (quoting Bapp, 802 F.2d at 603); see also Campbell v. Astrue, No. 11-854-CV, 2012 WL 29321, at *1 (2d Cir. Jan. 6, 2012) (stating that the "extent of [the claimant's] non-exertional limitations did not require the [hearing officer] to consult a vocational expert").

The application of the Grids is inappropriate "where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment."  Bapp, 802 F.2d at 605-06.  The Second Circuit defines the phrase "significantly diminished" as "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  Id.

A hearing officer can determine whether a claimant's non-exertional limitations significantly diminish his or her work capacity by determining whether the claimant can meet the basic mental demands of competitive, remunerative, and unskilled work as provided in Social Security Regulation 85-15.  See SSR 85-15 (S.S.A.).  These demands include the ability, on a sustained basis, to "understand, carry out, and remember simple

17

instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Id. A substantial loss of ability to meet any of these demands would severely limit the potential occupational base. Id.

In this case, the hearing officer found that Sipe could perform the full range of sedentary work, and that Sipe's additional limitations "have little or no effect on the occupational base of unskilled sedentary work." Admin. R. 26. The hearing officer considered the mental demands outlined in Social Security Regulation 85-15, applied them based on the mental residual functional capacity previously established, and concluded that Sipe could meet the demands of unskilled work. Id. The hearing officer then applied the Grids and concluded that Sipe was not disabled. Id.

This Court must now consider whether the hearing officer's decision that Sipe met the demands in Social Security Regulation 85-15 was supported by substantial evidence. In this case, Dr. Barry found that Sipe could do simple calculations, follow and understand very simple directions and instructions, and perform some simple rote tasks. Admin. R. 267-68. As previously discussed, Dr. Kamin, in assessing Sipe's mental residual functional capacity, found Sipe was mildly or moderately limited in all relevant areas. Id. at 282-83. For example, Dr. Kamin

18

found mild limitations on daily living and moderate limitations in Sipe's abilities relating to instructions, concentration, attendance, interactions with the public, responses to changes in the work setting, and accepting instructions and responding appropriately to supervisors.  Id.  Finally, Sipe stated at the hearing that he gets along with people pretty well, id. at 414, that he is looking for work, id. at 413, and that he would prefer to work if possible, id. at 409.

This Court holds that the conclusions of Dr. Barry and Dr. Kamin, along with Sipe's testimony, provide substantial evidence for the hearing officer to find that no substantial loss of ability existed in any of the areas specified under Social Security Regulation 85-15 and thus, that Sipe could perform unskilled work.  The hearing officer properly applied Social Security Regulation 85-15 and properly considered the effect of Sipe's non-exertional impairments when finding that jobs existed in significant numbers in the national economy that Sipe could perform.  Based on Sipe's ability to meet the demands of unskilled work, Sipe's work capacity was not significantly diminished and, therefore, the hearing officer was not required to consult a vocational expert.

**V.     CONCLUSION**

Wherefore, for the foregoing reasons, it is hereby

ORDERED that Sipe's motion for judgment on the pleadings,

ECF No. 9, is DENIED; and it is further

    ORDERED that the Commissioner's motion for judgment on the pleadings, ECF No. 11, is GRANTED; and it is further

    ORDERED that the hearing officer's decision denying disability benefits is AFFIRMED; and it is further

    ORDERED that Sipe's complaint, ECF No. 1, is DISMISSED.

    **IT IS SO ORDERED.**

Dated: July 2, 2012

                                                  /s/ William G. Young  
                                                  WILLIAM G. YOUNG  
                                                  U.S. DISTRICT JUDGE